## Brown *v*. State.

### Opinion delivered June 18, 1923.

Weapons—railroad guard carrying on railroad property.—Under Crawford & Moses' Digest, § 2804, making it unlawful to carry a pistol as a weapon, but providing that a person may carry a weapon upon his own premises, guards employed by a railroad company to protect employees are liable for carrying weapons, although on property belonging to the company.

Appeal from Pulaski Circuit Court, First Division; *John W. Wade,* Judge; affirmed.

*E. B. Kinsworthy* and *R. E. Wiley,* for appellants.

The appellants were special guards employed by the railroad company to protect its property during the strike, were stationed on its premises by the owner, were its agents for the control thereof, and were not violating the law in carrying pistols for this purpose. C. & M. Digest, § 2804. The courts of other States, under similar statutes, have held that such guards come within the exception. 129 N. C. 521, 39 S. E. 824; 93 N. C. 585, 53

Am. Rep. 472; 50 S. W. (Tex.) 348. One having dominion or control over the land is within the exception. 56 Ark. 559; 49 Ark. 174; 45 Ark. 536. The cases should be reversed and dismissed.

*J. S. Utley,* Attorney General, *John L. Carter* and *Wm. T. Hammock,* Assistants, for appellee.

Appellants were on the premises of the master, and could not carry pistols there without violating the statute. Section 2804, Crawford & Moses' Digest. Neither was it necessary for them to carry pistols in discharging their duty during the strike, since they could have been effectively armed with guns without any violation of law. Provision in a statute which permits a person to carry a weapon *on his own premises* will not be a defense to a prosecution of a servant who at the time is on the master's premises. 8 R. C. L. 293; 120 N. C. 582; 49 Ark. 174; 45 Ark. 536.

SMITH, J. Appellants were tried on an agreed statement of facts and convicted of carrying concealed weapons. The substance of the agreed statement of facts is as follows: Each of the defendants carried a pistol as a weapon in the railroad yards belonging to the Missouri Pacific Railroad Company, in the city of North Little Rock. They were each then and there engaged in the performance of their duties as special guard in the service of the railroad company for which they had been employed.

The railroad company is a corporation authorized to do business in Arkansas, and was then and there, through its officers and agents, in possession of the premises in question. Said premises consisted of a large parcel of land on which the railroad company was then maintaining yards, consisting of railroad tracks, machine shops, coal houses, storage houses, water tanks, tool houses and other buildings and structures in large numbers, for use as railroad terminals for the cities of Little Rock and North Little Rock, for the purpose of carrying on its business as a common carrier.

It was further agreed that prior to July 1, 1922, said railroad company employed several hundred mechanics, carpenters, machinists and skilled laborers of various kinds, who worked on said premises in the construction and repair of cars, locomotives and other structures belonging to the said railroad company, to keep and maintain the property of said railroad company for the purpose of carrying out its duties as a common carrier. On July 1, 1922, practically all of said workmen quit their work and went out on a strike, in compliance with the orders of the governing bodies of the several unions or crafts of which said workmen were members, and that said strike was in full force from that date until and after the said July 5, 1922. In the progress of said strike said strikers and their sympathizers picketed the said premises of said railroad company, and congregated in large numbers near all regular points of ingress or egress to said premises, and undertook to persuade and prevent any persons from working in their places as mechanics and craftsmen, as aforesaid, and thus to interfere with the conduct by said company of its business as a common carrier. There were threats of violence against those who undertook to remain in the service of said railroad company, or to enter said service to take the place of the strikers, and there were acts of violence against such persons.

"The said railroad company undertook to hire other persons to take the place of said strikers, and did hire and have such persons, and put them to work on the premises aforesaid. The officers and managers of said railroad company considered it necessary to station special guards upon said premises for the purpose of protecting the property located on said premises and the persons engaged in the work formerly done by the strikers on said premises, from depredation and injury by the unlawful acts of other persons. For that purpose said railroad company had employed as its servants and agents the defendants, had stationed them on said property, and held them responsible for safeguarding

the said property to the extent of their ability to guard and protect it. They were engaged in the performance of their duties as such special guards when they carried the pistols as weapons as hereinbefore stated.

"The pistols carried by the defendants were not such pistols as are used in the army or navy of the United States."

By § 2904, C. & M. Digest, it is made unlawful for any purpose to carry a pistol as a weapon, but there is a proviso that "nothing in this act shall be so construed as to prohibit any person from carrying any weapon when upon a journey or upon his premises."

It is the insistence of counsel for the appellants that, under the facts recited above, appellants are entitled to the benefit of the exception permitting one to carry a weapon upon his premises. But the majority of the judges do not think so.

No one of these guards had the exclusive possession of the premises, or any part of them, nor did the guards, all together, have the exclusive possession of the premises, or any part of them. The premises were primarily and principally used and occupied by the employees of the company who were engaged in the performance of the labor for which the various buildings of the company were intended.

In 8 R. C. L. p. 293, it is said: "An exception in a statute which permits a person to carry a weapon on his own premises will not be a defense to a prosecution of a servant who at the time is on his master's premises."

In 2 McClain on Criminal Law, § 1035, it is said: "Some statutes permit one to carry a concealed weapon on his own premises. A laborer on the land of another is not within such exception; nor is one upon his own premises when, in fact, he has leased the premises to another without reservation of authority to enter thereon. The common stairway or halls of a building, occupied by offices of different persons, are not within the description of one's 'own property'. So

one engaged in supervising the erection of a building for another is not on his own premises. Under a statute not making such an exception, it is no defense that the weapon was carried within the curtilage of defendant's abode.''

In *Kinkead* v. *State*, 45 Ark. 536, the defendant was a contractor engaged in the erection of a certain building for another person, and he was arrested in the building while in the supervision of the work, and a pistol was found on his person. It was insisted that he came within the exception of the statute allowing one to carry weapons upon his own premises; but the court said: ''The exception only protects such as have an estate or interest in the real property which constitutes the premises. Obviously a builder, having merely a lien for his work and materials, has no such interest.''

The language quoted was somewhat qualified in the case of *Clark* v. *State*, 49 Ark. 174, where the court said that doubtless a tenant in possession of leased premises has such an interest in the premises as to be entitled to the benefit of the exception.

In the opinion of the majority, appellants had no interest or estate in the premises as tenants or otherwise. They were there as employees only. There was no part of the premises the possession of which they did not share with other guards and employees, and they were not, therefore, upon their premises within the meaning of the proviso contained in the statute.

It is true the appellants were upon the premises to exclude certain other persons from the premises, and this is a right which the railroad company had, as the owner of the premises; but, in the opinion of the majority, the exercise of this right did not operate to bring them within the exception contained in the statute. It is unlawful to carry weapons, and only those persons may do so who come within the excepted class, and as, in the opinion of the majority, the appellants were not on their

own premises, the court below properly adjudged them guilty, and that judgment is affirmed.

Mr. Justice HART and the writer are of opinion that appellants are within the exception contained in the statute.